**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 17-34 |
| | ) | Civ. A. No. 22-730 |
| ATTICUS SLITER-MATIAS, | ) | Judge Nora Barry Fischer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

This matter is before the Court on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence filed by pro se Defendant Atticus Sliter-Matias, ("Defendant" or "Sliter-Matias") which is opposed by the Government.  (Docket Nos. 142; 150).  Defendant seeks to vacate his convictions on two counts of mail fraud for various reasons including that he was provided ineffective assistance by his trial counsel.  (Docket Nos. 142; 152).  The Government counters that the claims raised by Defendant are barred by the relitigation doctrine, procedurally defaulted and/or otherwise without merit.  (Docket Nos. 150; 159).  After careful consideration of the parties' positions, and for the following reasons, Defendant's Motion [142] is denied.

### II.    BACKGROUND

The Court of Appeals set forth the following facts of this matter.

> Using fake names and addresses, Sliter-Matias created thousands of accounts on eBay and PayPal referred to as "stealth accounts." He paired each stealth eBay account with a stealth PayPal account, assigning each pair a unique IP address and e-mail account. Roughly 161 of the stealth eBay accounts he created were involved in fraudulent transactions. In each of these fraudulent transactions he would post an item for sale through one of his eBay accounts. Once a buyer had been confirmed, he would provide a tracking number to the buyer for a shipment within the buyer's zip code or mark the item

1

shipped on eBay to prompt eBay to release the buyer's purchase funds to the paired PayPal account. Using those funds, he would purchase items, including gold and silver, and ship them to himself. However, instead of the purchased item, the eBay buyer would receive only a torn or empty envelope from Sliter-Matias, sent through his Click-N-Ship account with the United States Postal Service. By the time the buyer reported the fraud, there would be no funds in Sliter-Matias's account to refund to the buyer, so eBay or PayPal would reimburse the buyer themselves. eBay and PayPal lost over $110,000 from these fraudulent transactions. On July 5, 2016, the United States Postal Inspectors executed a search warrant at Sliter-Matias's home address. Sliter-Matias initially declined to be interviewed. Later when he asked to be interviewed, he claimed that he created eBay accounts with fake names and addresses to sell laptops, that the gold and silver found in his bedroom closet were his mother's retirement assets, and that he sent packages through his Click-N-Ship account for his employer. The Postal Inspectors collected a number of documents from his residence during this search. A significant portion of these documents were lost in transit. Sliter-Matias was ultimately charged with two counts of mail fraud under 18 U.S.C. § 1341.

At trial, Sliter-Matias denied being involved in the fraudulent transactions. He claimed that he created the stealth accounts to sell to eBay users who wanted to circumvent the limit eBay places on the number of sales a user can make each week and that he was compensated for his stealth accounts, sometimes in the form of gold and silver. He also claimed that he sent the empty or torn packages through his Click-N-Ship account to test the stealth accounts and make sure they would work.

Evidence presented at trial indicated that Sliter-Matias maintained a spreadsheet monitoring each fraudulent transaction involving the stealth accounts, that Sliter-Matias was the one who mailed torn or empty envelopes to the buyers after they paid for their purchases, and that the funds released to the stealth accounts were used only on purchases for Sliter-Matias. There was no evidence to suggest that his alleged employer ever existed or that Sliter-Matias ever communicated with anyone regarding the sale of his stealth accounts.

After a five-day trial, the jury returned a guilty verdict on both counts.

*United States v. Sliter-Matias*, 837 F. App'x 910, 912 (3d Cir. 2020), *cert. denied*, 209 L. Ed. 2d 766, 141 S. Ct. 2648 (2021).

This case was initially assigned to this Court but was referred to the Honorable Bill R. Wilson, who presided over the matter at trial, sentencing and other post-trial matters. (*See e.g.*, Docket Nos. 56; 60). Defendant was represented by Mark A. Kaiser, Esq. during pretrial proceedings, at trial and some post-trial proceedings. (Docket Nos. 7; 100). To that end, Attorney Kaiser filed a motion for new trial on Defendant's behalf on June 14, 2018, which was summarily denied by Judge Wilson on June 18, 2018. (Docket Nos. 83; 84). Attorney Kaiser also represented Defendant at an initial session of the sentencing hearing on October 1, 2018 but was dismissed in the interim. (Docket No. 107). For his part, Defendant arrived late to the October 1, 2018 sentencing hearing and was ordered detained at that time. (*Id.*). Defendant requested the appointment of new counsel and James Kraus, Esq. was appointed to represent him on January 14, 2019. (Docket Nos. 97; 99). A sentencing hearing was held on April 12, 2019 at which time Defendant was sentenced by Judge Wilson to concurrent terms of 46 months' imprisonment and 3 years' supervised release at each of Counts 1 and 2. (Docket No. 114). He was also ordered to pay $379,591.95 in restitution, a $200 special assessment, and forfeit gold and silver bars and coins as well as various electronics used during the scheme. (Docket Nos. 114; 115).

Defendant timely appealed the judgment to the U.S. Court of Appeals for the Third Circuit and Attorney Kraus continued to represent him on appeal. (Docket No. 118). Defendant argued three separate issues on appeal: 1) "the evidence presented at trial was insufficient to sustain his convictions"; 2) "the Government violated his Fifth Amendment right against self-incrimination by introducing testimony at trial that noted his initial invocation of that right to the Postal Inspectors"; and 3) "the indictment should have been dismissed because the government's loss of

potentially exculpatory records acquired from the search of his residence violated his right to due process." (Docket No. 123-1). He also claimed that automated fraud-detection systems used by eBay and PayPal were allegedly insufficient to establish his participation in the fraud. (*See* Docket No. 150 at 9 (citing Defendant Reply Brief at 10-12)). The Court of Appeals rejected all of Defendant's arguments and affirmed his convictions and sentence in a Memorandum Opinion dated December 2, 2020. *Sliter-Matias*, 837 F. App'x 910 (3d Cir. 2020). The Supreme Court of the United States then denied his petition for writ of certiorari on May 27, 2021. *Sliter-Matias*, 141 S. Ct. 2648 (2021). After the appeals were completed, Judge Wilson granted a writ of execution to the Government and directed that certain currency and other valuables which were seized by the Government but not forfeited be applied towards the outstanding restitution. (Docket Nos. 131; 132).

Defendant was released from BOP custody on January 6, 2022 and is currently serving his 3-year term of supervised release. (Docket No. 141). His supervised release case has been transferred to the Northern District of Ohio where he resides, and he is being supervised in that jurisdiction. (*Id*.).

Defendant submitted the instant Motion to Vacate, Set Aside or Correct Sentence along with a host of supporting exhibits on May 16, 2022. (Docket No. 142). In his Motion, Defendant seeks to vacate his convictions at trial and claims that his trial counsel, Kaiser, provided ineffective assistance. (*Id*.). He sets forth 10 separate claims, as follows:

      I.     Due Process Violation Based on the Government's Alleged Use of a "Third-Party Autonomous Entity"

      II.    Government "Violated Chain of Custody" with Respect to Seized Electronic Devices

      III.   Postal Inspector Weckerly Testified Falsely as to Seized Gold and Silver Items

IV.     Postal Inspector Weckerly Falsely Testified as to the Exhibit HM5 Thumb Drive Recovered from Defendant's Computer

V.     USPIS Forensic Analyst Christopher Wilkins Testified Falsely

VI.     Government "Tampered" with Its Witnesses "resulting in the submission of hearsay testimony and fabricated evidence."

VII.     Government Had a Conflict of Interest with eBay and PayPal and Violated Due Process

VIII.     Government Committed a *Brady* Violation by Redacting Personally Identifiable Information

IX.     Government Committed a *Brady* Violation in Failing to Disclose Trial Exhibits

X.     Ineffective Assistance by Attorney Kaiser at Trial Due to Alleged Health Conditions

(*Id*.). Defendant does not challenge his sentence nor the representation by Attorney Kraus at his sentencing or on appeal. (*Id*. at 38 (stating that Attorney Kraus "dutifully conducted himself professionally during sentencing, appeal and throughout all post-trial proceedings.")). In its Response, the Government argues that claims I-IX are barred by the religitation doctrine and/or have been procedurally defaulted and that claim X alleging ineffective assistance of counsel should be denied without an evidentiary hearing. (Docket No. 150). Defendant's Reply provides further argument and some additional supporting documents. (Docket No. 152). Finally, the Government's Sur-Reply reiterates its position that Defendant's Motion should be denied. (Docket No. 159).

    As all briefing has concluded, Defendant's Motion is now ripe for disposition.

III.    LEGAL STANDARD

    "A motion to vacate sentence pursuant to 28 U.S.C. § 2255 is the exclusive means to

challenge collaterally a federal conviction or sentence." *Frazier-el v. Bureau of Prisons*, 376 F. App'x 164, 165 (3d Cir. 2010). Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States. . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. "[A] petitioner on supervised release is 'in custody' for purposes of § 2255." *United States v. Baird*, 312 F. App'x 449, 450 (3d Cir. 2008). "As a collateral challenge, a motion pursuant to 28 U.S.C. § 2255 is reviewed much less favorably than a direct appeal of the sentence." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citation omitted). Section 2255 relief "is available only when 'the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and ... present[s] exceptional circumstances where the need for the remedy afforded by the writ ... is apparent.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

Generally, a court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992); *see also United States v. Tolliver*, 800 F.3d 138, 140-41 (3d Cir. 2015). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also Tolliver*, 800 F.3d at 140-41. If a hearing is not held, the court must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). In the Court's view, Defendant's motion can be decided after review of the records in the case, and

therefore a hearing is not necessary.

IV.   DISCUSSION

As noted, Defendant brings ten separate claims challenging his convictions for two counts of mail fraud in violation of 18 U.S.C. § 1341 but does not contest his sentence.  (Docket No. 142). In response, the Government maintains that Defendant's claims I-IX must be denied because they involve issues which were either previously litigated on direct appeal and/or could have been raised on appeal but were not such that they are procedurally defaulted.  (Docket Nos. 150; 159). The Government further contends that Defendant's claim X alleging ineffective assistance of his trial counsel must be denied without a hearing.  (*Id*.).  Defendant counters that his claims I-IX are supported by alleged new evidence he was able to locate after he was released from custody and otherwise argues that he is entitled to a hearing on his claims.  (Docket Nos. 142; 152).  Having carefully considered the parties' positions, the Court concurs with the Government that Defendant's claims are procedurally barred and/or without merit.

A.   *Claims Previously Litigated; Procedurally Defaulted*

With respect to the asserted procedural defects, the U.S. Court of Appeals for the Third Circuit has held that:

> [a] § 2255 motion does not function as a second appeal, *see United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), and thus it does not ordinarily allow for re-review of issues raised on direct appeal. *See, e.g., Travillion*, 759 F.3d at 288; *United States v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir. 1981); *see also Kaufman v. United States*, 394 U.S. 217, 227 n.8, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969) ("Where a trial or appellate court has determined the federal prisoner's claim, discretion may in a proper case be exercised against the grant of a § 2255 hearing."). At the same time, a claim not raised on direct appeal cannot ordinarily be reviewed under § 2255. *See, e.g., Travillion*, 759 F.3d at 288 n.11; *DeRewal*, 10 F.3d at 105 n.4; *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). From these standards, collateral attack under § 2255 seems to present

> [defendants] with a Catch-22: raising an issue on direct appeal may
> preclude that issue from serving as a basis for § 2255 relief, but not
> raising an issue on direct appeal may forfeit the [defendant's] ability
> to seek § 2255 relief on that ground.

*United States v. Braddy*, 837 F. App'x 112, 115 (3d Cir. 2020). However, as is discussed in the next section of this Opinion, "[p]recedent has long recognized that 'a § 2255 motion is a proper and indeed the preferred vehicle for a federal [defendant] to allege ineffective assistance of counsel.'" *Id.* (quoting *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (further citations omitted)).

Here, Defendant has attempted to raise several issues in his claims I-IX which were previously litigated in his direct appeal and rejected by the Court of Appeals. (Docket Nos. 142; 152). To that end, the Court of Appeals denied all of the following: his challenge to the sufficiency of the trial evidence; his claim that automated fraud-detection systems used by eBay and PayPal were allegedly insufficient to establish his participation in the fraud; his allegations that his Fifth Amendment right to avoid self-incrimination was violated by testimony of the Postal Inspectors; and, his assertion that the loss of certain evidence seized from his residence constituted a due process/*Brady* violation by the prosecution. *See Sliter-Matias*, 837 F. App'x 910. Therefore, he cannot utilize a § 2255 motion to attempt to relitigate these issues that have already been resolved against him. In any event, a review of the issues litigated on appeal makes clear that each of Defendant's claims I-IX which allege violations of his rights to due process and under *Brady v. Maryland*, as well as certain evidentiary defects at trial are procedurally defaulted because they could have been raised on appeal but were not. *See Braddy*, 837 F. App'x at 115.

Since Defendant's claims I-IX are procedurally defaulted, it is his burden to show cause and prejudice or actual innocence in order to proceed with those claims. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Where a defendant has procedurally defaulted a claim by failing

to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'").  He has failed to carry his burden here.  As this Court has held previously,

> [t]o establish cause for the procedural default, a defendant must show that "some objective factor external to the defense impeded counsel's efforts to raise the claim." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citation omitted). Examples of external objective factors which have been found to constitute cause include "interference by officials," "a showing that the factual or legal basis for a claim was not reasonably available to counsel," and "ineffective assistance of counsel." *Id*. at 494.
>
> Once a legitimate cause to excuse the procedural default is shown, a defendant must also establish actual prejudice resulting from the errors about which he complains. *See United States v. Frady*, 456 U.S. 152, 168 (1982). To do so, the defendant must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id*. at 170 (emphasis in original). Accordingly, the defendant must prove that, if not for the error, there is a reasonable probability that the result of the proceeding would have been different. *Strickler v. Greene*, 527 U.S. 263, 289 (1999).

*United States v. Gorny*, No. CR 13-70, 2018 WL 5044223, at *3 (W.D. Pa. Oct. 17, 2018);

Defendant essentially argues that he has shown sufficient cause to excuse his procedural default because he has presented "new evidence" as part of this § 2255 Motion which was neither available to him nor his appellate counsel due to his incarceration and the alleged ineffectiveness of his trial counsel.  (Docket No. 152).  In this Court's estimation, the excuses offered by Defendant simply do not establish that some external factor prevented his appellate counsel from raising these issues on appeal.  *See United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) ("To establish 'cause' for procedural default, a defendant must show that 'some objective factor external to the defense impeded [his] efforts to raise the claim.'") (internal quotation omitted).  As to his own incarceration, the record is clear that Defendant was ordered detained by Judge Wilson after he

arrived more than an hour and a half late for the initial session of his sentencing hearing on December 1, 2018 and that he remained detained through his April 15, 2019 sentencing and appeal. (Docket No. 107 at 2-4, 7). Despite same, Attorney Kraus was appointed as defense counsel on January 14, 2019 and represented him at his sentencing and on appeal. (Docket Nos. 100; 137-38). Defendant has not offered any evidence or argument that some external factor prevented Attorney Kraus from accessing these documents during the eight-month period from his appointment through his filing of the Reply Brief with the Court of Appeals on September 27, 2019. (Docket Nos. 142; 152). Since Defendant does not challenge Attorney Kraus' representation and even admits that he "dutifully conducted himself professionally during sentencing, appeal and throughout all post-trial proceedings," he has failed to establish cause for the failure to raise claims I-IX in the appeal. *See Pelullo*, 399 F.3d at 223.

In addition, even if Defendant had shown cause, he has not established prejudice resulting from the errors that he complains about in claims I-IX. *See id.* At most, the arguments and documents that Defendant has presented in his § 2255 Motion may have potentially enabled his counsel to better cross-examine Government witnesses at trial, including the Postal Inspectors and representatives of eBay and PayPal. (Docket Nos. 142; 152). But, the documents purportedly showing, among other things, that he: was involved in legitimate sales on eBay which were not discussed at trial; purchased gold and silver coins from Bullion Direct and/or Liberty Coin prior to his involvement in the fraud; and paid for those items using means other than PayPal, are not sufficient to show that the result of the trial would have been any different. (Docket Nos. 142; 152). On this latter point, Defendant testified in his own defense at trial and Judge Wilson found that he did not obstruct justice because such testimony was "too far out in left field or maybe in outer space" and could not have influenced the jury. (Docket No. 120 at 5). With that said, the

10

Court of Appeals summarized the many admissions that Defendant made throughout his own trial testimony whereby he conceded the essential elements of the charged offenses.

> At trial, the government presented strong evidence establishing that Sliter-Matias knowingly participated in the fraudulent transactions and acted to further them. Sliter-Matias admitted to maintaining a spreadsheet listing the details of every fraudulent transaction involving the stealth accounts, including the eBay item number, the sale price, the name of the buyer, and the status of each transaction. Sliter-Matias also admitted that he was the one who shipped the torn or empty envelopes to the buyers. In addition, the funds acquired from the fraudulent transactions were used only for his benefit, and they were all spent immediately after they were released to PayPal accounts he created.
>
> Viewed in the light most favorable to the government, the evidence presented permits a rational trier of fact to find beyond a reasonable doubt that Sliter-Matias was the sole participant in this scheme and knew that he was being paid for items the buyers would never receive.

*Sliter-Matias*, 837 F. App'x at 913.

All told, none of Defendant's arguments as to claims I-IX undermine the core facts supporting his mail fraud convictions at Counts 1 and 2 which were bolstered by his own admissions and the victim testimony such that he has neither demonstrated prejudice nor his actual innocence. *See id.* His other challenges to the non-custodial aspects of his sentence including the $379,591.95 in restitution, order for forfeiture of currency, silver and gold bars and coins, and the writ of execution which applied the non-forfeited items toward the outstanding restitution are simply not cognizable in § 2255 proceedings. *See e.g., United States v. Davies*, App. No. 19-3929, 2020 WL 3259420, at *1 (3d Cir. May 7, 2020) (citing *United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015)) (Defendant's "challenges to the forfeiture and restitution orders are not cognizable under § 2255.").

For all of these reasons, Defendant's claims I-IX are denied and no certificate of appealability shall issue as to such claims.

### B.  Ineffective Assistance of Counsel

Defendant next argues in claim X that his convictions should be vacated because his trial counsel, Attorney Kaiser, provided ineffective assistance of counsel as he was suffering from a physical and/or mental health impairment at the time of trial.  (Docket Nos. 142; 152).  He asserts that he was convicted because his trial counsel was not healthy enough to represent him, became fatigued at times during pretrial meetings, lost certain exhibits after trial, and failed to make consistent objections at trial.  (Docket No. 142 at 36-39).  Defendant supports such a claim with a photograph of trial counsel purportedly depicting him asleep during a pre-trial meeting, highlights that several continuances were granted due to trial counsel's health conditions, and the fact that Defendant ultimately requested new counsel due to his trial counsel's ill health.  (Docket Nos. 142; 152).  The Government maintains that Defendant has failed to demonstrate that he was provided ineffective assistance of counsel at trial.  (Docket Nos. 150; 159).  After evaluating the parties' positions in light of the record evidence, the Court holds that Defendant has not sufficiently alleged that he was prejudiced due to his counsel's physical and/or mental health ailments.

A defendant "seeking relief on the grounds of ineffective assistance of counsel bears the burden to demonstrate two requirements," United States v. Seeley, 574 F. App'x. 75, 78 (3d Cir. 2014).  First, a defendant "must establish that (1) the performance of counsel fell below an objective standard of reasonableness, and, (2) counsel's deficient performance prejudiced the defense." United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)); see also Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000) (citing Strickland, 466 U.S. at 688, 694) (same). The United States Court of Appeals for

the Third Circuit has "endorsed the practical suggestion in *Strickland* [that the Court may] consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005)); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). The Supreme Court has emphasized that judicial scrutiny of defense counsel's performance is "highly deferential," and a "strong presumption" exists that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690.

Most importantly, courts have repeatedly held that "prejudice is not presumed on ineffectiveness claims based on counsel's physical or mental health." *United States v. Donahue*, No. 3:11-CR-33, 2018 WL 1410772, at *5 (M.D. Pa. Mar. 21, 2018), *aff'd*, 792 F. App'x 165 (3d Cir. 2019). Hence, courts have rejected general claims by defendants that they were provided ineffective assistance by counsel in various circumstances, including, allegations that an attorney was: abusing alcohol or drugs during trial, *see United States v. Washington*, 869 F.3d 193, 204 (3d Cir. 2017); suffering from cancer during trial, *see Yarrington v. United States*, No. 12-3108, 2013 WL 2155501, at *3 (C.D. Ill. May 17, 2013); incapacitated due to medications, *see United States v. Henges*, 591 F. App'x. 287, 287 (5th Cir. 2015); using oxycontin and undergoing chemotherapy during trial, *see United States v. Moses*, No. CR 14-232, 2018 WL 563160, at *3 (E.D. Pa. Jan. 25, 2018); and fell asleep during trial and failed to cross-examine one of the government's 32 witnesses, *see United States v. Best*, 831 F. App'x 610, 613 (3d Cir. 2020). Rather, to succeed on an ineffective assistance of counsel claim, Defendant must point to specific facts in the trial record supporting the alleged ineffectiveness of his trial counsel and meet both prongs of the *Strickland*

test. *See e.g., Washington*, 869 F.3d at 204 ("We agree with the District Court that the general allegations of alcohol use do not require a departure from *Strickland*'s two-prong standard" and "alleged substance abuse is not, without more, one of the rare forms of dereliction amounting to the per se denial of a defendant's Sixth Amendment right to the effective assistance of counsel.").

Applying these principles to Defendant's allegations that his trial counsel provided ineffective assistance, the Court finds that Defendant has plainly not met the *Strickland* standards for several reasons. *See Otero*, 502 F.3d at 334. First, he has not established that he was prejudiced by his trial counsel allegedly falling asleep during pretrial meetings and misplacing exhibits after the trial because he has not demonstrated that either activity affected the outcome of the trial of his case. *See Best*, 831 F. App'x at 613. Indeed, he admits that the exhibits were available during the trial and makes no allegations that his trial counsel slept during any portion of the trial. (Docket Nos. 142; 152). Second, Defendant asserts that his trial counsel did not make consistent objections at trial but has not pointed to any specific evidence which was admitted without an objection and affected the outcome of his case. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) ("vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation.").

Third, Defendant maintains that his trial counsel was ineffective because he was supposedly lost and unavailable to provide him advice during a recess which took place while he was testifying. (Docket Nos. 142; 152). However, the Supreme Court has held that:

> when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying. He has an absolute right to such consultation before he begins to testify, but neither he nor his lawyer has a right to have the testimony interrupted in order to give him the benefit of counsel's advice.

*Perry v. Leeke*, 488 U.S. 272, 281 (1989). The Supreme Court also found that prohibiting communications between a lawyer and his testifying client during a brief trial recess was distinguishable from its prior decision in *Geders v. United States* which held that a prohibition on all communications between a lawyer and client during an overnight recess violated the defendant's right to counsel. 425 U.S. 80, 82 (1976). Here, the record reflects that the lunchtime recess during Defendant's testimony was approximately one hour and 11 minutes. (Docket No. 105 at 81 ("Luncheon recess taken 11:50 a.m.-1:01 p.m.")). Thus, Defendant's general complaint that his counsel did not consult with him over the lunch hour while he was testifying is insufficient to demonstrate that he was provided with ineffective assistance of counsel. *See Otero*, 502 F.3d at 334.

Finally, while this Court did not preside over the trial of the case, the record reflects that trial counsel was an active participant in the trial as he: gave an opening statement; cross-examined each of the Government's witnesses; lodged objections during trial; presented his client's testimony on direct; argued points for charge; and provided closing arguments. (*See e.g.*, Docket Nos. 102 at 62, 94, 114, 150, 169; 103 at 3, 33, 44, 111, 133; 104 at 17, 39, 110, 158, 161, 188; 105 at 6, 43-44, 50, 71, 74, 77, 138, 151, 178). The record further reveals that Defendant never complained about his trial counsel to Judge Wilson during the trial proceedings as he did not raise any issues until several months after he was convicted and detained. Overall, after reviewing the trial record, the Court concludes that Defendant has not sufficiently alleged that he was provided ineffective assistance of counsel at trial due to his trial counsel's infirmities because he has not cited to any instances in the record where counsel's performance fell below an objective standard of reasonableness nor established a likelihood that the outcome of his trial would have been different but for the alleged ineffectiveness. *See Donahue*, 792 F. App'x at 167-68. Accordingly,

Defendant's claim X must also be denied and a certificate of appealability will not issue as to this claim.

V.    CONCLUSION

Based on the foregoing, Defendant's motion to vacate his sentence under 28 U.S.C. § 2255 [142] is denied, with prejudice. The Court further holds that Defendant has failed to make a substantial showing of the denial of a Constitutional right and is not entitled to a certificate of appealability. An appropriate Order follows.

_s/Nora Barry Fischer_
Nora Barry Fischer
Senior U.S. District Judge

Dated: April 14, 2023

cc/ecf: All counsel of record

Atticus Sliter-Matias
13781 Cedar Road, #205
South Euclid, OH 44118
(via regular and certified mail)